The order appealed from should be affirmed, with $10 costs.

LEONARD, J.—I concur. The order of affirmance may fix the time for proceeding with the examination.

CLERKE, J.—I concur.

---

## SUYDAM a. THE GRAND-STREET AND NEWTOWN RAILROAD COMPANY.

*Supreme Court, Second District; General Term, March,* 1864.

NEGLIGENCE.—COLLISION.—PERSONAL INJURIES.—NEW TRIAL.—
CITY COURT OF BROOKLYN.—WITHDRAWING CAUSE FROM JURY.

Where, in an action to recover damages occasioned by the collision of vehicles in the highway, it appeared that the collision was occasioned by the plaintiff's unwisely and unnecessarily turning his horse, so as to throw the rear part of his cart against the defendant's car,—*Held,* that a verdict for the plaintiff was against evidence.

In cases of collision between a horse-car upon a street railroad and an ordinary vehicle which can traverse all parts of the street, any presumption of negligence is against the driver of the latter.

It is the duty of the City Court of Brooklyn to grant a new trial where a verdict against evidence has been rendered.

An order of the City Court of Brooklyn denying a motion for a new trial is reviewable on appeal.

Where, from the position and circumstances of the parties, a jury is likely to be influenced by a mistaken, though honorable, sympathy for the feeble against the strong,—*e. g.,* an humble citizen against a wealthy corporation,—it is peculiarly the duty of the court to withdraw the case from the consideration of the jury, if a verdict in accordance with such sympathy would be against evidence.

Appeal from a judgment of the City Court of Brooklyn.

This action was brought by Rem Suydam against The Grand-street and Newtown Railroad Company, to recover $10,000 for personal injuries. The jury found a verdict for the plaintiff for $1,500. After the denial of defendant's motion for a new trial, judgment was entered, and the defendant appealed. The material parts of the testimony in the court below are fully stated in the opinion.

*Jasper W. Gilbert,* for the appellant.—I. The case ought not to have been submitted to the jury, because there was not any evidence upon which the jury were authorized to find that the defendant had been guilty of any negligence or want of care. On the contrary, the legal presumption was that the defendant did its duty, and there was no evidence sufficient to overcome this presumption. But the evidence showed that the plaintiff, if he had used proper care, might have avoided the accident.

II. The motion for a nonsuit should have been granted, for the reason that the evidence clearly and unquestionably established the fact that the injury to the plaintiff was caused by his own negligence, inattention, or want of care. The jury were not authorized to find that the injuries were occasioned solely by the negligence of the defendant, or that the plaintiff had proved that they were caused without any fault on his part; and so the court charged, if the jury believed the defendant's witnesses. There was nothing to warrant any distrust of their testimony. The court, therefore, should have given it its due weight, and decided accordingly, instead of submitting it to the jury under an "if." (Toomey *a.* London, &c., R. W. Co., 91 *Eng. C. L. Rep.*, 146; Johnson *a.* Hudson River R. R. Co., 20 *N. Y.*, 65, 73; Dascomb *a.* Buffalo & State Line R. R. Co., 27 *Barb.*, 221; Brooks *a.* Buffalo & Niagara Falls R. R. Co., 25 *Ib.*, 600; Mangam *a.* Brooklyn City R. R. Co., 36 *Ib.*, 230; Ernst *a.* Hudson River R. R. Co., 32 *Ib.*,, 159; Button *a.* Hudson River R. R. Co., 18 *N. Y.*, 248, 254; Wilds *a.* Same, 24 *N. Y.*, 430; *S. C.*, 23 *How. Pr.*, 492.) Upon the most favorable view for the plaintiff, it was a case of mutual negligence, and in such a case the defendant is entitled to the verdict. (18 *N. Y.*, *supra.*)

III. The court below, for the reasons above assigned, erred in refusing a new trial, and this court has power to correct the error. The statute creating the City Court makes all laws regulating the practice of the Supreme Court, and the course of procedure therein, applicable to and binding upon the City Court, and also grants to the City Court the power to review its decisions, and to grant new trials. (*Laws of* 1849, 171, ch. 125, § 4.) When a statute authorizes the doing of a thing for the sake of justice, the word "may" is the same as the word "shall." (Macdougall *a.* Patterson, 11 *Com. B.*, 755, 772; Mayor, &c., of N. Y. *a.* Furze, 3 *Hill*, 612.) The appellate jurisdiction of the Supreme Court is comprehensive enough to correct such an error as this. This question is *res judicata*, in this district at least, by the cases of Van Pelt *a.* Blake, and Chadsey *a.* Brown, MSS. And it seems clear, upon looking into the City Court act and the Code. (*Laws of* 1850, 148, ch. 102, § 1; *Code*, § 330.) The order appealed from is an intermediate order, and the judgment was entered afterwards, and it manifestly involves the merits and affected the judgment.

IV. The court below erred in charging that plaintiff might remain on the track until he had notice of the approach of a car, without being negligent.

*William J. Huff*, for the respondent.—I. The plaintiff fully made out his case. He had shown that he was free from negligence, and that the collision occurred solely by the negligence of the defendant. (Johnson *a.* Hudson River R. R. Co., 20 *N. Y.*, 65, 72; Button *a.* Same, 18 *Ib.*, 248; Fero *a.* Buffalo and State Line R. R. Co., 22 *Ib.*, 209; Wilds *a.* Hudson River R. R. Co., 24 *Ib.*, 430.)

II. 1. The weight of evidence was not in favor of the defendant, and there was a preponderance of testimony in favor of the plaintiff. The whole testimony on the part of the defendant, as to swaying movement of the plaintiff's horse, and that cart was parallel with car, and as to distance between car and cart, and that car had passed cart, was contradicted by plaintiff's witnesses. The plaintiff used every care to avoid a collision. There was no negligence whatever on his part. There was no swaying of his horse. The jury disbelieved the testimony of defendant's witness, Buckman. The collision oc-

curred before the stanchion was broken, and the jar threw the tail end of the cart in towards car, and the load on cart struck stanchion. 2. The whole case showed that the defendants were guilty of negligence, which contributed to the injury. They were going at an unusual rate of speed. They did not give plaintiff time to get out of their way. Their car did not check its speed until brought up by actual forced and wedged contact with the plaintiff's cart and load. 3. There was no negligence whatever on the part of the plaintiff; all that the law required of him is the use of ordinary care. The finding of the jury on the whole case is correct, and should not be disturbed.

III. The horse-cars of a city are bound to use the public highways, through which they are run, in a manner similar to the use made of the streets by the omnibuses which they are displacing: the only difference between them and the omnibus is, that they are confined to their rail; the mere fact of their having a track in a public street does not give them the exclusive right to the street occupied by their track. The judge's charge was correct; there must be mutual accommodation between the cars and vehicles on the street, no driver having a right to negligently and wilfully hinder a car. (Wilds *a.* Hudson River R. R. Co., 24 *N. Y.*, 430.)

IV. Ordinary care is all that the law requires of the plaintiff. Where evidence is conflicting, the court will not disturb the finding of the jury; their finding of fact being conclusive. (Fleming *a.* Hollenback, 7 *Barb.*, 271; Keeler *a.* Fireman's Insurance Co., 3 *Hill*, 250; Eaton *a.* Benton, 2 *Ib.*, 576; Adsit *a.* Wilson, 7 *How. Pr.*, 64; Stoddard *a.* Long Island R. R. Co., 5 *Sandf.*, 180.) Defendant's main witness, Buckman, contradicted himself by saying he was superintendent, and that he was not; and was contradicted in other important points.

BROWN, J.—This is an appeal from the judgment of the City Court of Brooklyn, entered upon a verdict in favor of the plaintiff for $1,500, and from an order denying a motion for a new trial. The action was for damages for negligently causing a railway car to strike the cart of the plaintiff, from which he was thrown and injured in his person.

It appeared by the proof that there are two railway tracks

laid down in the centre of First-street, in Brooklyn, the carriage-way therein being thirty feet wide. The space occupied by the rails is thirteen feet seven inches. The defendant operated a horse railroad upon the street. The plaintiff is a cartman, and at the time of the collision, June 1st, 1861, was driving a cart about six feet wide, and eight feet six inches in length, standing in front of the platform, and proceeding southwardly along First-street, on the westwardly railroad track. The car of the defendant approached the plaintiff, going in the same direction. There is some difference of opinion amongst the witnesses of the plaintiff as to the rate of speed of the car, some thinking it rapid, others not more than the usual rate; whilst those of the defendant thought it not over four and a-half or five miles an hour. In the view I entertain, the difference in the rate of speed is not material. At the distance of some twenty feet from the cart the car-bell was rung, and the car nearly stopped, or brought down to a walk; on hearing which, the plaintiff turned off to the left, to allow the car to pass. The car was run some distance slowly, and had gone two-thirds of its length past the cart, and within eighteen or twenty inches from it, when the collision occurred, and the plaintiff was thrown from his cart into the street and seriously injured. The cart was heavily loaded with agricultural implements, some of which projected one foot, and others two feet beyond the rear or hinder end of the cart, the axle being at the centre. The collision occurred between the car and the cart at a point two-thirds of the way from the front part of the body of the latter and the hinder end of the cart; or what is more probable, indeed quite certain, the agricultural implements projecting therefrom, which were the platform of a reaping machine and the handles of two horse-hoes. The car is sixteen feet long, with nine stanchions, there being a distance of eighteen inches between each stanchion, the third stanchion from the hind end of the car and the sixth from the forward end being the point of collision. About these facts there is no conflict of evidence that I can see; indeed, many of them are derived from the testimony of the plaintiff as well as that of the defendant. For all the purposes of this opinion, I assume them to be true. The collision between the two vehicles, which resulted in the injury to the plaintiff, is not without an adequate cause, which he is bound to explain and estab-

lish to the satisfaction of the court, before he can be allowed to retain his verdict. This is a burden which every plaintiff voluntarily takes upon himself when he resorts to a court of justice for redress, and from which neither the court nor the jury have power to relieve him. The latter may give him a verdict, but unless supported by the evidence it cannot be maintained. In cases of this kind he must show that the collision proceeded exclusively from the negligent acts of the defendant, and not from his own negligent acts, or his own negligent acts combined with those of the defendant. Both vehicles were going over the street in the same direction, in the exercise of a common right, side by side, when the hinder end of the cart came in contact with the side of the car, and the question is, through whose imprudence or want of care did it occur?

This same case, upon substantially the same evidence, was before us at the general term in February last, and we then took occasion to say, " that a cartman's cart is a vehicle which traverses all parts of the street, crossing and recrossing, going backwards and forwards, and turning to the right or to the left, at the will of the driver, its passage-way limited only by the limits of the street. Not so with a railway car. It is irrevocably fixed to a given track, laid down longitudinally with the street. To this line the car must adhere, and from which it cannot be inclined or deflected for any purpose. It is quite evident, therefore, that where a cartman's cart and a railway car are progressing side by side, with a space of 16 or 24 inches between them, there can be no collision if each adheres to the track which the law assigns to it. And if a collision does occur under such circumstances, the presumption of negligence is altogether against the driver of the cart and not against the conductor of the railway car, for the obvious reason that the former can deviate and depart from his track, which the latter cannot do. One of the two must incline towards the other, or there can be no contact; and as the cart can be inclined and deflected towards the railway car at the pleasure of the driver or by his indifference or carelessness, while the latter is inexorably bound to its iron rail whatever might be the will or the misconduct of the conductor, there can be no other presumption but against the care and good conduct of the cart-driver."

Both the cart and the car were proceeding in the same direc-

tion, the car on the right and the cart on the left hand. Two-thirds of the car passed the cart without contact, and had there been no change in their relative position, there would have been no contact; that is, if each of them had proceeded directly along the street and without deviation, the remaining third part of the car would have been passed freely and there would have been no collision, and had they inclined towards each other, the sides of both vehicles would have become the point of contact. This was not so, however: the side of the car and the end of the cart came in contact. By what means, then, was the hinder end of the cart brought in contact with the side of the car? The car could be moved forward and backward, but not to the one side or the other. It was not possible to move the car so as to produce the actual result. It was produced by a movement of the cart, and by no other means. The cart, with the projecting load, was ten feet six inches long, six feet of which was behind the axle. If the head of the horse was pulled by the driver to the left, even for a small space, it would place the cart diagonal to the railway and bring the end of it instantly in collision with the car. That this actually took place may be inferred from the injury done to the third stanchion from the rear of the car, and the broken end of the platform of the plaintiff's cart. It is also proved by the sum of the testimony on both sides. Rem Suydam, the plaintiff, himself testifies: " I was pulling to the left when the collision took place. I knew the car struck my load, which projected about two feet to the rear of my cart. I suppose the car struck the tail end of my cart." Patrick McQuinn, a witness for the plaintiff, testified: " The car struck the machinery on the right-hand corner of the tail of the cart with violence. It jarred the plaintiff off the cart." Again he says, " The horse was diagonal with the track, and the plaintiff kept the same direction until the collision." William S. Townsend, a witness for the plaintiff, says: " I observed the horse and cart turning off to the left. I saw the horse and part of the cart. The cart was ahead, and going the same direction as the car." Ira Buckman, a witness for the defendant, said: " I was standing on the step (of the car) on the left side; as we passed, my face was towards him (the plaintiff) and on a line with the side of the car. My face was sixteen or eighteen inches from the platform of the reaping-machine on

plaintiff's cart, which projected further than any thing on the load; that is, when my face passed the rear of the cart. After I told the car-driver to go on, the car began to get under way. Just before the collision, the horse swayed to the left and threw the hind end of the cart against the side of the car. All was done in an instant. This was after I told the driver to start up. This platform projected over the right side of the tail of the cart, and lay rather diagonally across the cart, and he stood by the other end of it in front. Our car hit the platform that was the point of collision. The platform slewed around, the cart-rung acting as a fulcrum, and the other end in that way knocked him off the cart. It broke the stanchion of the car, the third one from the hind end and sixth from the forward end. It broke out so that a piece fell on the ground." Again he says: "The car stopped within eighteen inches, or it would have broken another stanchion." George Bennett, another witness for the defendant, said: "The cart continued parallel with the car until we (the car) got nearly two-thirds past the rear end of the cart. Plaintiff was standing on the left-hand front corner. I saw him look towards the car; he pulled his horse to the left, and threw the end of the cart into the car. I saw the rear load of the cart coming towards the car as the plaintiff turned his head. It struck the car by the stanchion near the rear." Patrick Malone, a witness for the defendant, said: "When we commenced passing the cart, it was perfectly straight with us. I think we were twelve or thirteen inches from the rear of the cart." This is the evidence, and it leaves no manner of doubt upon my mind, that the accident was caused by the imprudent and mistaken act of the plaintiff in pulling his horse to the left, as he himself says, at the moment of the collision. It is in vain to say, in the face of the evidence, that he is without fault, and did not contribute largely to bring about the collision which resulted in his injury. It was the manifest duty of the jury to find a verdict for the defendant; and failing to do this, I think the City Court should have set aside the verdict upon the motion for that purpose. The remarks of the late Mr. Justice Barculo, in the case of Haring *a*. New York and Erie R. R. Co. (13 *Barb.*, 9), are peculiarly applicable to the present case. In speaking upon the duty of non-suiting a plaintiff, or setting aside a verdict where the plaintiff has con-

tributed to the injury, he says: "We cannot shut our eyes to the fact that in certain controversies between the weak and the strong, between an humble individual and a gigantic corporation, the sympathies of the human mind naturally, honestly, and generously run to the assistance and support of the feeble and apparently oppressed, and that compassion will sometimes exercise over the deliberations of a jury an influence, which, however honorable to them as philanthropists, is wholly inconsistent with the principles of law and the ends of justice. There is therefore a manifest propriety in withdrawing from the consideration of the jury those cases in which the plaintiff fails to show a right of recovery."

The judgment, and the order denying the motion for a new trial should be reversed and a new trial granted, with costs to abide the event.

SCRUGHAM and LOTT, JJ., concurred.

---

## KOLLS *a.* DE LEYER.

*Supreme Court, Second District; General Term, March,* 1864.

MARRIED WOMAN. — BENEFIT TO THE ESTATE. — COVENANTS OF TITLE.—DEFECT OF PARTIES.

A married woman is liable for a breach of the covenants of a deed which she has given. The covenants induce the purchase, enlarge the price, and thus benefit her estate.

The power to use, grant, devise, and convey real property, conferred upon married women, includes by implication the power of giving the usual covenants for title.

The joinder of unnecessary parties-defendant does not justify a demurrer for defect of parties.

Appeal from an order overruling a demurrer to the complaint.

This action was brought by Benedix F. Kolls against Margaretta De Leyer and Anthony De Leyer, to recover from the separate estate of Margaretta the sum of $111.79, the amount which plaintiff had been compelled to pay to redeem from a tax-sale real estate which the defendants had sold to him with